IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.                                                        CASE NO. 4:01-cr-00028-SPM/AK

LYNDOM BURL BAKER,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

    This cause is before the Court on Defendant's § 2255 motion to vacate and supporting memorandum. Docs. 86 & 89. The Government filed a response, Doc. 97, and Defendant has filed his reply. Doc. 98. This matter is therefore in a posture for decision. Having carefully considered the issues presented, the Court recommends that the motion to vacate be denied.

## BACKGROUND

    In June, 2001, Defendant Lyndom Burl Baker and a co-defendant, Dwayne Everett Jackson, were charged with one count of conspiracy to possess with intent to distribute and to distribute more than 50 grams of a substance containing cocaine base, "crack cocaine," and a substance containing cocaine. Doc. 1. Almost immediately, counsel for instant Defendant moved to suppress "the evidence seized in this cause, approximately 240 grams of powder cocaine and 209 grams of crack cocaine, and the statements made as being a result of an illegal search and seizure...." Doc. 16 at 1. In support of the motion, Defendant argued:

> Based upon what appears to be nothing more than racial profiling (there being no probable cause to stop and search the car), the automobile containing the three [black] men was stopped as it exited the [Greyhound bus station] parking lot and the three men were ordered out, handcuffed, and questioned.

*Id*. at 2.  After hearing, the Court denied the motion to suppress, finding that the stop was a consensual encounter with the police and that "the evidence at the hearing did not show that the investigators pursued Defendant or his companions solely because of their race."  Doc. 27 at 5.

Shortly before trial, the co-defendant, Jackson, pled guilty to the charge in the indictment.  Docs. 33-35 & 38.  The case then proceeded to trial solely against instant Defendant.  During trial, Jackson testified against Defendant.  Doc. 72 at 85-99.  On cross-examination, Defendant's counsel focused on attacking Jackson's credibility, repeatedly pointing out that Jackson had "told a number of lies" to the "DEA agent...to a judge...a number of police officers" and "didn't mind lying if it suits [his] needs, if it's what [he had] to do to sort of get out of the problems [he was] in."  *Id*. at 107-08.  Before the Government rested, the parties stipulated to the "quantity and quality of drugs," thereby negating the necessity of calling the chemist who analyzed the seized cocaine. *Id*. at 110.  After the Government rested, Defendant moved for a judgment of acquittal based on the fact that the only evidence against Defendant "has been from Dwayne Jackson [who is] an admitted liar.  He has admitted that he lies to suit his own needs and certainly the court should give no credence to his testimony...."  *Id*. at 112-13.  The Court summarily denied the motion.  *Id*. at 113.

Defendant then took the stand in his own defense and denied any involvement in the charged conspiracy.  The Court submitted the following instructions to the jury on the issue of drug quantity:

> In this case, the Defendant is charged with conspiracy to distribute more than fifty

(50) grams of a substance containing crack cocaine and cocaine. Although the indictment charges that the quantity of the substance containing crack cocaine involved in the conspiracy was more than fifty (50) grams, you may find a Defendant guilty of the conspiracy offense even if the quantity of the mixture and substance containing cocaine involved in the conspiracy is less than that amount.

\* \* \*

If you find that a Defendant is guilty of conspiracy to possess with intent to distribute a substance containing crack cocaine, then you must unanimously determine the quantity of mixture and substance containing cocaine involved in the conspiracy. That is, you must determine beyond a reasonable doubt the quantity of the substance containing crack cocaine for which the Defendant is responsible by answering the following question:

Has the government proven, beyond a reasonable doubt, that the Defendant is responsible for a conspiracy involving fifty (50) grams or more of a substance containing crack cocaine?

If your answer to this question is yes, then mark your verdict accordingly and then you work on this charge will be finished. If your answer is no, then you must answer the following question:

Has the government proven, beyond a reasonable doubt, that the Defendant is responsible for a conspiracy involving more than five (5) but less than fifty (50) grams of a substance containing crack cocaine?

If your answer to this question is yes, then mark your verdict accordingly and then your work on this charge will be finished. If your answer is no, then you must answer the following question:

Has the government proven, beyond a reasonable doubt, that the Defendant is responsible for a conspiracy involving less than five (5) grams or more of a substance containing crack cocaine, or less than 500 grams of powder cocaine?

Mark your verdict in accordance with your answer to this question, and then your work on this charge will be finished.

In determining the quantity of the substance containing crack cocaine or cocaine for which a Defendant may be responsible you are instructed that a conspirator may be held responsible under the law of possession of drugs in which he had no direct or personal participation. For purposes of determining the quantity of cocaine for a which a Defendant may be responsible, you are instructed that a conspirator is responsible for conspiracy activities in which he is personally

> involved, and for drugs involved in those activities. A conspirator also is responsible for the subsequent acts and conduct of co-conspirators, and drugs involved in those acts or conduct, that are in furtherance of the conspiracy and are reasonably foreseeable to the conspirator.

Doc. 45 at 11-13.

After deliberating, the jury found Defendant guilty and that he was "responsible for the following amounts of controlled substance: 50 grams or more of crack cocaine. And as to the substance containing cocaine, less than 500 grams of a substance containing cocaine, but more than zero grams." *Id*. at 165; *see also* Doc. 46.

In the Presentence Report, the probation officer made the following drug weight calculation:

> On November 3, 2000, law enforcement seized 242 grams of cocaine hydrochloride and 209 grams of cocaine base from the defendants at the Greyhound Bus Station in Tallahassee, Florida....Baker was also in possession of $4,900.00 in United States currency, and this money appears to be from prior sales of controlled substances. This offense involved a total of 451 grams of cocaine and cocaine base, of which 54% was cocaine hydrochloride and 46% was cocaine base. According to information obtained from the DEA, one ounce of cocaine hydrochloride sells from $800.00 to $1,200.00, and one ounce of cocaine base sells for $800.00 to $1,200.00. Using the most conservative approach, $4,900.00 would convert to 80 grams of cocaine and cocaine base. Using a ration based on the types of controlled substances seized, of the 80 grams determined under the currency conversion, 54% will be considered cocaine hydrochloride (43.2 grams) and 46% will [be] considered cocaine base (36.8 grams).

Presentence Report at ¶ 10.

The probation officer also found that Defendant "is considered a career offender" because of his prior drug felony convictions. *Id*. at ¶ 25. This finding pushed Defendant's criminal history computation from a Category III to a Category VI. *Id*. at ¶ 33.

Prior to sentencing, Defendant objected to Paragraph 10: "The defendant submits there has been no explanation concerning the currency found in the vehicle; therefore, he does not

believe it should be converted to 80 grams of cocaine." *Id*. at ¶ 74. In response, the officer maintained that the "currency seized from the defendant was properly converted to cocaine and cocaine base." *Id*. at ¶ 75.

On November 13, 2001, Defendant appeared with counsel for sentencing. The Court began the proceeding by allowing them an opportunity to speak. Counsel addressed the Court first:

> MR. CLARK: I had originally made one objection to the presentence report objecting to the conversion of the money that was found in the care with [Defendant] into cocaine, which increased...the amount of cocaine that he was held responsible for.
>
> But in reflecting on...the entire presentence report and the fact that the probation officer has determined that he qualifies as a career offender based on his criminal history, and the facts of this case, that objection is really moot, and has no bearing on the resulting offense level of 37, and Criminal Category of VI.
>
> I would like to ask the Court to consider the current Eleventh Circuit law at this time, which allows the Court to make a downward departure for persons who are adjudged to be career offenders when their prior criminal history is not as serious as a career offender status would make it to be.
>
> * * *
>
> I say that, Your Honor, because Mr. Baker's prior criminal history–he has two felony convictions, one in 1993 in Blountstown, Florida; and one in 1995 in Blountstown, Florida, both of which were for the sale of cocaine.
>
> * * *
>
> And he was given probation in each of those instances....And his criminal history points totaled 4, which is quite a bit less than the 13 or more that are required for a

> Category VI.
>
> * * *
>
> If Mr. Baker were not a career offender, he would be at a category of 34, with a criminal history of III....
>
> I'd ask the Court to consider sentencing Mr. Baker to the 188-month range–188-235, rather than the 360 to life.

Doc. 75 at 4-5. After consulting with counsel, Defendant added:

> [I]n the past, I...was involved in drugs, and–this issue here occurred. I know the jury found me guilty. But I was just a person at the wrong place trying to do another guy–do another person a favor.
>
> And I would just like to apologize.

*Id.* at 5-6.

After hearing the Government's response, the Court sustained Defendant's objection to Paragraph 10 of the PSR, *id.* at 9-10, and sentenced Defendant to 360 months imprisonment, which represented the low end of the Guidelines, finding that while the Court had the authority to grant a downward departure, it "was not warranted in this case." *Id.* at 10; *see also* Docs. 60 & 64.

Defendant timely appealed, solely challenging the ruling on the motion to suppress, i.e., "whether the interaction between the police and the individuals in the car that was neither parked nor moving was a consensual encounter under the Fourth Amendment." *United States v. Baker*, 290 F.3d 1276, 1278 (11th Cir. 2002). This was an issue of first impression in the Eleventh Circuit. *Id.* In affirming the Court's order, the appellate court stated:

> Here, the police officer did not make a sufficient show of authority to sufficiently convey to [Defendant] that his liberty was restrained. [The officer], dressed in plain clothes, walked up to the car that was stopped because it was blocked by

> traffic. While [the officer] displayed his badge he did so to identify himself as a police officer not to detain the vehicle. He did not tell [the driver] to turn off the engine and he asked to speak with the men inside the car. [The driver] consented. The officers did not display a weapon or use any language or tone that would indicate that compliance with the officers' request was compelled. [Defendant] was free to decline to answer the officers' questions...but instead engaged in conversation....Before the officers found the drugs they did not touch [Defendant]. [Defendant] could have ended the encounter at any time prior to the drugs being found. Just because [he] was in a car that was momentarily stopped waiting for traffic to clear does not elevate this interaction to that of a seizure. For these reasons, the district court did not error [sic] in holding that this was a consensual encounter not protected by the Fourth Amendment.

*Id*. at 1279.

The instant motion ensued. On this occasion, Defendant raises four claims of ineffective assistance of counsel. In the first ground, Defendant charges that counsel was ineffective for failing to move to dismiss the indictment based on the failure of the indictment to allege the quantity for the powdered cocaine. Doc. 86 at 5. In Ground Two, Defendant maintains that counsel was ineffective for failing to object to the Court's jury instructions with regard to drug quantity. *Id*. at 6. In the third ground for relief, Defendant argues that counsel rendered ineffective assistance when he failed to object to the Court's failure to make findings of fact and conclusions of law regarding Defendant's status as a career offender under the Sentencing Guidelines and when he failed to object to the Court's failure to depart downwardly on Defendant's sentence. *Id*. Finally, Defendant asserts that counsel was ineffective when he failed to cross-examine the co-defendant about a felony arrest which occurred while Defendant was on bond in this case or, alternatively, that the Government committed a *Brady* violation by withholding this information from counsel. *Id*.

In response, the Government has submitted the affidavit of Defendant's trial counsel, William R. Clark, Jr., to refute Defendant's allegations.

**DISCUSSION**

Because Defendant's claims involve allegations that his counsel was ineffective, a consideration of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate before the Court examines each claim individually.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The

relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far

between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

    I. Failure to move to dismiss indictment based on lack of quantity for powder cocaine.

In the first ground for relief, Defendant charges that counsel was ineffective for failing to seek dismissal of the indictment because it failed to allege any quantity as to the powder cocaine. Defendant argues that because "[n]o gram weight was specified for the powder cocaine," the indictment did not provide him with sufficient notice of the charge so as to mount a proper defense and confused the jury when the trial judge unexplainedly "selected 'less than 500 grams' of powder cocaine as the triggering amount [to] be used by the jury to measure whether [Defendant] was guilty of that segment of the Indictment." In Defendant's view, "[t]his was a clear Due Process violation." Doc. 89 at 7-8.

In response, Mr. Clark, Defendant's trial counsel, counters:

> As I determined very early on...because of the penalties for crack cocaine (up to life imprisonment), and [Defendant's] criminal record, he was looking at a minimum mandatory sentence of 20 years if convicted for Count I, notwithstanding any amount of powder cocaine. I therefore thought my time better spent in attacking the initial 'traffic' stop which I did by filing a motion to suppress....

> Mr. Baker alleges in his motion that because the indictment did not indicate the quantity of powder cocaine, he was not provided sufficient notice of what amount to defend against. In ...the government's answer to the discovery request, a lab report was provided which indicated the amount of powder cocaine to be 241.8 grams. The police reports indicated a like amount.

> I was aware of the drug amounts from the arraignment. I don't believe there are any grounds to dismiss an indictment because the amount of powder cocaine is

> something less than 500 grams and that amount is known to the defendant. [Defendant] apparently believes that <u>U.S. v. Riley</u>...requires that he can only be sentenced to the maximum sentence for the lesser of the two drugs. After reviewing <u>Riley</u>, I don't think it says that at all. Not only that, in Mr. Baker's case, the jury made a specific finding that he was guilty of a conspiracy to possess with the intent to distribute a controlled substance and that it involved more than 50 grams of crack cocaine and between 0-500 grams of powder cocaine.

Doc. 97, Ex. B.

In reply, Defendant maintains that counsel's position is "in error" and "begs the question of [his] ineffectiveness to assert that his time was better spent on a suppression motion" since a "<u>Strickland</u> serious error prejudicing a defendant cannot be cured by trial counsel's position that he ignored the 'quantity of powder cocaine' issue, but instead pursued an unrelated motion to suppress evidence." Doc. 98 at 2.

It is clear from Mr. Clark's affidavit that he did not ignore the powder cocaine issue but instead determined that, unlike the suppression issue, it was not an issue which would have a substantive effect on the case against his client. On the one hand, suppression of the drugs and money seized during the arrest and Defendant's subsequent statements to law enforcement would have resulted in complete dismissal of the indictment. On the other hand, however, an attack on the indictment for its failure specifically to quantify the amount of powder cocaine as something other than more than 50 grams of a substance containing cocaine might, at best, have secured a temporary reprieve but would have been easily remedied by a superseding indictment. Defendant knew from the date of his arraignment the precise quantity of powder cocaine at issue, and thus, he was never at risk from a lack of notice of the charges against which he was required to defend. Under these circumstances, counsel's decision to focus on a pretrial attack on the evidence was reasonable and epitomizes the type of strategic decision which is not questionable

under *Strickland*.

The Court also agrees with counsel's conclusion that *United States v. Riley*, 142 F.3d 1254 (11th Cir. 1998), is not applicable. *Riley* is a pre-*Apprendi* case and involved a general verdict of guilt without any interrogatories to the jury, not the special verdict at issue here.[1] *Riley* would only arguably apply if the jury had not been specially instructed to determine both drug type and drug quantity.

    II.   Failure to object to Court's jury instructions with regard to drug quantity.

At trial, Defendant stipulated to the quantity of powder cocaine recovered in the seizure, approximately 242 grams. Doc. 72 at 110. Thus, the amount of powder cocaine found in the jacket was established, and the only questions for the jury were (1) whether Defendant was guilty of the charged drug conspiracy, and if so, (2) what amount, if any, of the seized powder cocaine was Defendant responsible for. Doc. 46. The parties stipulated to this form of the verdict. Doc. 72 at 59-60. With those facts in mind, Defendant's argument that the Court improperly amended the indictment with its "clear intent to charge the 500 gram weight of powder cocaine, Doc. 89 at 12, is confusing. The jury was clearly instructed to determine whether Defendant was guilty beyond a reasonable doubt of a drug conspiracy involving less than 500 grams of powder cocaine, which was the stipulated amount recovered in the seizure. It was then given the option on the verdict form of finding Defendant responsible for (1) 5 kilograms or more of powder cocaine, (2) 500 grams or more of powder cocaine but less than 5

---

[1]Defendant argues that "no special verdict was submitted to the jury" in this case. Doc. 98 at 4. According to the Eleventh Circuit's pattern jury instructions, the verdict form submitted to the jury in this case was indeed a special verdict. *See* Annotations and Comments, Offense Instructions 85, *Eleventh Circuit Pattern Jury Instructions–Criminal* (2003).

kilograms, (3) less than 500 grams of powder cocaine but more than 0 grams, or (4) no grams of powder cocaine at all.  Defendant was charged, *inter alia*, with conspiracy to possess with intent to distribute and to distribute more than 50 grams of a substance containing cocaine, Doc. 1, and the Court's instructions and verdict form were clearly in accordance with that charge.

In sum, counsel did not act deficiently when he failed to object to the Court's instructions, as they were in clear accordance with the charge and the evidence presented and stipulated to.  Because the Court does not find any deficiency in counsel's performance on this issue, it does not find persuasive Defendant's argument that but for counsel's failure, there is a "reasonable likelihood" that "an objection to the 500 gram jury charge and a motion for mistrial would have caused the Trial Court to strike it from the Indictment before submission to the jury."  Doc. 89 at 14.

> III.  Failure to object to Court's failure to make findings of fact and conclusions of law regarding Defendant's career offender status.

In the third ground for relief, Defendant argues that trial counsel was ineffective for failing to "properly argue" that the career offender provisions of the Sentencing Guidelines "over-represent[ed] the seriousness of [Defendant's] criminal history and the likelihood that he will commit further criminal conduct."  Doc. 89 at 14-15.  In Defendant's opinion, counsel should have argued that his prior convictions "were insufficient to fit within the definition of a 'controlled substance' to place [Defendant] in the status of a Career Offender...."  *Id*. at 15.  Additionally, Defendant maintains that counsel should have objected further when the Court failed to articulate its reasons "for imposing a Career Offender sentence almost doubling a non-career offender sentence."  *Id*. at 17.

These arguments are patently without merit.  The facts underlying the prior felony drug

convictions were laid out in the PSR, including the drug type and amounts at issue and the fact that Defendant "was probated" in both cases. Therefore, there was no need for counsel to present matters which were plainly before the Court and were apparently not contestable, as even now, Defendant does not present anything to suggest that the PSR was incorrect in its recitation of his prior felony record or why, for example, a conviction for possession of cocaine with intent to sell is not a "controlled substances offense." *See* Fla. St. Ann. § 893.03(2)(a)(4) (1992) (cocaine is Schedule II controlled substance); § 893.12(1)(a)(1) (1992) (controlled substance named in 893.03(2)(a) is second degree felony); § 775.082(3)(c) (1992) (person convicted of second degree felony is subject to term of imprisonment not exceeding 15 years). Counsel made the argument that Defendant's prior drug felonies were minor in nature, involving a total of 25 grams of crack, and that although Defendant technically fit the definition of a career offender, he was not the type of offender who was the target of the career offender enhancement. In response, the Government argued that Defendant's prior felony drug history "indicates a pattern of drug activity, and that's exactly what the guidelines were established to address, is a progression of criminal activity and prior offenses...." Doc. 75 at 7. It further argued that "while he may only have two prior drug offenses for smaller amounts, apparently that did not catch his attention and...so he...went on to become a bigger drug dealer, as found by the jury." *Id*.

Although there is certainly case law to support the notion that the Court must place on the record the reasons for its sentence, *see United States v. Williams*, 438 F.3d 1272, 1274 (11th Cir. 2006), Defendant's argument that counsel's failure to object further to the Court's denial of the downward departure denied him an opportunity to appeal that issue is misplaced. Even without specifically requesting further illumination of the Court's ruling, counsel sufficiently preserved

the downward departure and career offender issues for appeal.[2]  If the Government had filed the enhancement notice, Defendant would plainly have been facing life imprisonment because of his prior felony drug record.  *See* 21 U.S.C. § 841(b)(1)(A) and § 851 (proceedings to establish prior convictions for statutory enhancement purposes).  Thus, either way, whether under the Guidelines or under the statute, Defendant faced life imprisonment, and counsel's failure to persuade the Court and to secure a more substantial departure from life imprisonment than the minimum Guidelines sentence is not ineffective assistance of counsel.

---

[2]Although Defendant faults counsel for failing to preserve his appeal on these issues, he does not argue that counsel was ineffective for actually failing to raise these issues on appeal.  In this Court's view, there was simply nothing to appeal in that regard, *see United States v. Webb*, 139 F3d 1390 (11th Cir. 1998) (generally Defendant may not appeal court's refusal to depart downward), and Defendant's contention that "there would have been a reversal" if Defendant had "the opportunity to appeal the career offender status issue," Doc. 98 at 7, is not supported either factually or legally.

    IV.    Failure to cross-examine co-defendant about felony arrest which occurred while Defendant was on bond.[3]

In his final ground for relief, Defendant focuses on one exchange between counsel for the Government and the co-defendant, Dwayne Jackson:

    Q.    Have you ever been arrested before this case?

    A.    No, ma'am.

Doc. 72 at 86. Defendant maintains that counsel should have cross-examined Jackson on this point, since technically, Defendant had been arrested "before this case." According to Jackson's PSR, he was arrested on May 8, 2001, in Broward County, Florida, for robbery with a firearm and aggravated assault with a firearm. He was indicted in this case on June 5, 2001, and when he was brought before this Court for his initial appearance and arraignment, he was in the custody of Broward County. Doc. 13. Of course, "this case" arose out of the November 3, 2000, arrest by state law enforcement officers for trafficking in more than 400 grams of cocaine, a case which was *nolle prossed* after Jackson was indicted here based on the November 3, 2000, set of facts.

Usually, an arrest, as opposed to a conviction, is not a proper avenue for impeaching a witness, unless the arrest bears on the witness' character for truthfulness. *United States v. Matthews*, 168 F.3d 1234, 1244 (11th Cir. 1999); *see generally* Fed. R. Evid.607-609. However, "evidence which normally would be inadmissible is indeed admissible if the opposing party

---

[3]Alternatively, Defendant charges that the Government committed a *Brady* violation by withholding this information from counsel. After his arrest in this case, Jackson was never released from federal custody. Docs. 19 (stipulation of detention by Jackson at initial appearance and arraignment) & 20 (order of detention). Trial counsel was, according to his affidavit, fully aware of Defendant's intervening arrest in Broward County. Doc. 97, Ex. B. There was no *Brady* violation.

Case No: 4:01-cr-00028-SPM/AK

opens the door to that line of questioning." *Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228, 1232 (11th Cir. 2004).

It does appear that counsel for the Government opened the door to questioning Jackson about his arrest record even though the arrest for robbery and aggravated assault might not otherwise have sufficiently borne on Jackson's character for truthfulness so as to make it admissible under Rule 608(b). Even if the Court assumes that trial counsel was deficient for failing to pick up on the nuance of the question and the technical untruthfulness of the answer, Defendant was not prejudiced thereby. Counsel pointed out the numerous lies that Jackson had told law enforcement and judicial officers with regard to the facts of this case, and it is not even remotely reasonably probable that but for counsel's failure to point out this one lie by Jackson about his arrest record, the result of the trial would have been different. *Strickland*, 466 U.S. at 694. Certainly, Jackson was an important witness, and the jury was properly instructed to evaluate his testimony in light of his cooperation. However, Jackson's testimony was not the only evidence which circumstantially tied Defendant to the charged drug conspiracy–Defendant picked up Jackson, a person he had only known for about a year, Doc. 72 at 116-17, at the bus station; Jackson was carrying a large amount of drugs; Defendant had prior felony drug convictions; and forty-nine, one hundred dollar bills were found under Defendant's seat and could not, according to the officer's testimony, easily have been put there by Jackson. *Id* at 82-84. If counsel had questioned Jackson about his arrest record, the confusion regarding whether he had been arrested "before this case" would have been easily cleared up on redirect, since before the November 3, 2000, arrest, he had not ever been arrested, although by the time he was arrested here, he had been arrested twice, once for the November 3, 2000, incident, and once for

the robbery and aggravated assault. In any event, it was not and would not have been the "strong impeachment issue" that Defendant supposes.

**CONCLUSION**

In light of the foregoing, the Court finds that counsel did not render ineffective assistance to Defendant under *Strickland*, and therefore, it is respectfully **RECOMMENDED** that Defendant's motion to vacate, Doc. 86, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this **10th** day of May, 2006.

**s/ A. KORNBLUM**
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**